UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

CASE NO.: 8:15-cr-242-T-24TBM

vs.

THEORIDOTES COLLINS

_____/

**ORDER**

This cause comes before the Court on Defendant's Motion to Suppress Any and All Physical Evidence and/or Statements (the "Motion to Suppress") (Dkt. 28), to which the government has filed a response in opposition (Dkt. 35). In the motion, Defendant, who has been charged with being a felon in possession of a firearm, seeks to suppress a rifle, ammunition, drugs, and other contraband found in his home during an unannounced compliance search by the office of probation on June 11, 2015.

The Court held an evidentiary hearing on the motion on December 11, 2015. Dkt. 42. The government presented the testimony of Alyssia Paul (Florida Department of Corrections Probation Officer assigned to Defendant at the time of the search on June 11, 2015), Kristie Duff (Correctional Probation Specialist, Florida Department of Corrections), Demetri Konstantopoulos, (Sergeant, Sarasota Police Department), and Konstantinos Balos (Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives). At the conclusion of the testimony and evidence, the Court made factual findings, which were largely uncontested the parties, and are repeated here in part.

FINDINGS OF FACT:

1. Defendant was placed on 12 months of State of Florida probation on April 21, 2015, and ordered to comply with the standard conditions of supervision including (6) "you will not associate with any person engaged in criminal activity," (7) you will not "visit any places where intoxicants, drugs or other dangerous substances are unlawfully sold, dispensed or used," and (9) "You will promptly and truthfully answer all inquiries directed to you by the court or the officer, and allow your officer to visit in your home."

2. Defendant signed a document titled Instructions to Offender" on April 22, 2015 which contained the notice that "Probation officers will conduct home verifications routinely and need to have access to your residence. Probation officers have the right to search your residence."

3. Alyssia Paul assumed supervision of Defendant on May 21, 2015.

4. Officer Paul was aware of Defendant's extensive criminal record and multiple violations of previous probations.

5. Defendant stayed at the residence of Amber Teed.

6. Officer Paul conducted a pre-arranged home visit to the residence on May 28, 2015 and June 8, 2015. Defendant was cooperative and on May 28, walked Officer Paul through the residence.

7. On June 9, 2015 ATF Agent Balos contacted Officer Paul and informed her that Defendant was associating with persons suspected in a recent shooting.

8. On June 11, at approximately 11:00 a.m. Officer Paul, and three other probation officers went to Defendant's residence to conduct a compliance search. They were

accompanied by officers from the Sarasota Police Department and ATF Agent Balos who were to act as back-up in case of a problem.

9. An unknown male answered the door and stated Defendant did not stay there. Amber Teed came to the door and said Defendant lived there but was not there. Officer Duff smelled the odor of marijuana coming from inside the residence.

10. Defendant ran out the back door and was apprehended approximately two blocks away. He was then handcuffed and returned to the residence.

11. Officer Paul and Duff along with two other probation officers entered the residence and conducted a search. They found a firearm and ammunition in Defendant's bedroom under a mattress cover.

12. Defendant was arrested for violating his probation.

13. The Sarasota Police Officers secured the residence and got a search warrant from a judicial officer.

DISCUSSION:

In order to conduct a search of a probationer's house, the probation officer must have a reasonable suspicion that the probationer was violating the terms of his probation. *See United States v. Knights*, 534 U.S. 112, 121 (2001) (stating that "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable"); *United States v. Carter*, 566 F.3d 970, 975 (11th Cir. 2009) (applying *Knights* and finding that reasonable suspicion was the standard to be applied to the search of a probationer's home). While the order of probation signed by the state court judge in this case did not include a specific search term, the temporary order of probation

used by the probation office to instruct defendant the day after sentencing and which defendant signed did have a search provision. In addition the Court's Order of Probation did contain provisions allowing the probation officer to visit the probationer's home, the requirement that that the probationer answer all inquiries made to him by the probation officer, that he comply with all instruction given to him by the probation officer, and the prohibition against being present in a place where drugs and other intoxicants were being used.

In order to determine whether reasonable suspicion was present, courts look to the "totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing." *United States v. Yuknavich*, 419 F.3d 1302, 1311 (11th Cir. 2005). Here the Court looks to whether the probation officer, and the other officers present, collectively had reasonable suspicion that the defendant was violating his probation at the time of the search. This includes what the officers knew before the search, including their entire experience with probationer. *Yuknavich*, 419 F.3d at 1311; *United States v. Henderson*, 145 App'x 346, 351 (11th Cir. 2005). Here, the Court finds that at the time of the search, the probation officers were aware of the following: Defendant had an extensive criminal history and an extensive history of violating the terms of his probation; According to another law enforcement officer, Defendant was associated with persons engaged in criminal activity; Defendant was compliant on two recent residence visits from his probation officer; yet on the day of the unannounced visit, two people lied to probation officer Paul about Defendant's presence in the house; the home smelled of marijuana; and Defendant fled from the back of the house[1]. Based on the totality of the circumstances, the Court finds that the probation officers had a particularized and objective basis

---

[1] Unlike the two previous visits from his probation officer, on the day of the unannounced compliance search, Defendant fled from the house. Based on his previous compliance, Defendant's flight was even more suspicious to the probation officers.

for suspecting legal wrongdoing and that the defendant was in violation of the terms of his probation. The June 11, 2015 warrantless search of Defendant's house was legal. The Court **DENIES** Defendant's Motion to Suppress.

    **DONE AND ORDERED** at Tampa, Florida, this 14th day of December, 2015.

*[Signature: Susan C. Bucklew]*
SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
Counsel of Record